**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MICHAEL FORTE,** ) | |
| **Petitioner,** ) | |
| ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **14-40173-TSH** |
| ) | |
| **SUPERINTENDENT, SEAN MEDEIROS,** ) | |
| **MCI-NORFOLK,** ) | |
| **Respondent.** ) | |

**MEMORANDUM OF DECISION AND ORDER**
**March 9, 2017**

**HILLMAN, D.J.**

**Background**

Michael Forte ("Forte" or "Petitioner") has filed a Petition Under 28 U.S.C. § 2254 For

Writ Of Habeas Corpus By A Person In State Custody (Docket No. 6)("Petition") against Sean

Medeiros, Superintendent, MCI-Norfolk, Norfolk, MA ("Respondent").   Petitioner was

convicted in Massachusetts Superior Court of murder in the first degree on the theory of extreme

atrocity or cruelty and sentenced to life in prison.  The Supreme Judicial Court of Massachusetts

("SJC") affirmed his conviction on January 10, 2014.  On December 8, 2014, he filed his Petition

in which he asserts the following three grounds for relief:

> **Ground One**: The trial court deprived of his Sixth Amendment Right to
> compulsory process by refusing to allow him to recall the two percipient
> witnesses in his case-in-chief.

**Ground Two**: The trial court deprived him of his Fourteenth Amendment Right
to present a complete defense by delaying access to review of a surveillance
video, by refusing to allow the defense to examine two identification witnesses,
and because there was no direct physical evidence he had committed the murder.

**Ground Three**: The trial court deprived him of his Fourteenth Amendment Right
to a fair trial by allowing the admission of tainted material evidence.

Forte has exhausted state-court remedies with respect to all of the grounds for relief

asserted in his Petition.  For the following reasons, the Petition is *denied*.

## **Facts**[1]

### *The Underlying Crime*

At approximately 3 a.m. on July 27, 2008, Ivette Torres ("Torres") and her cousin, Jariely

Vazquez ("Vazquez"), who were both eighteen years of age at the time, left Torres's house on

Howard Street in Springfield, Massachusetts in order to get something to eat.  They walked to

Main Street, and turned left onto Main Street to head toward the Crown Fried Chicken

restaurant, located on the northwest corner of State and Main Streets. As they walked along the

west side of Main Street, they passed the victim, Steven Donoghue, a local homeless man who

was resting in the alcove of Chapin's Furniture Store at the intersection of Main and Bliss

Streets. The women exchanged greetings with the victim, whom they had seen before in the

neighborhood, and continued onward. Shortly thereafter, the women noticed a man coming

toward them from in front of the restaurant. As the man approached, he shouted at the women

angrily, calling them "bitches and sluts." The women had almost reached the corner of State and

Main Streets when they decided to cross Main Street because they were afraid of the

---

[1] The following factual summary is taken essentially verbatim from the decision of the SJC affirming
Forte's conviction. *See Commonwealth v. Forte*, 469 Mass. 469, 471-72, 14 N.E.3d 900 (2014).  I will include
additional facts as necessary in my discussion of Forte's claims for relief.

approaching man. They observed that the man continued to walk south along the west side of

Main Street, toward where they had seen the victim.

When the women reached the United Bank on the northeast corner of State and Main

Streets, they looked across the intersection and saw that the restaurant was closed. They turned

back to return to Howard Street and noticed the man who had been shouting at them washing his

hands in a puddle "next" to where they had seen the victim. When they heard an automobile

horn, the women turned away, and when they looked back the man was gone. The women

walked south on Main Street, back in the direction from which they came, and crossed Main

Street near Bliss Street. When they approached the alcove where they had seen the victim

resting, they saw that his throat had been slit and he was covered in blood. Torres attempted to

dial 911 from her cellular telephone but the battery had died, and the women continued south on

Main Street until they were able to stop a passing motor vehicle and contact the police. From the

time they left Torres's apartment to the time they sought assistance in calling the police, the

women did not see anyone else on Main Street other than the victim and the man who had

shouted at them.

The women initially described the man they had seen to the police as "a white male ...

wearing a black T-shirt [and] tan pants," in his forties, "with a pot belly but not really fat or

built." They described his hair as "bushy, blond, possibly whitish" or gray, and "scruffy." Both

women observed that the man had white lettering on the front and back of his shirt and that he

was walking strangely.  An officer broadcast a description of the perpetrator as approximately

forty to fifty years of age, with "kind of bushy, shoulder-length, blondish-gray hair, wearing a

black T-shirt and tan pants." The women went to the police station and were shown many

photographs of men from the police data base who were between forty and fifty years old; they did not recognize any of them.  At around 6 a.m., a police detective was returning to the station from the scene when he saw the Forte leaving a small park wearing a black T-shirt and tan pants. The officer observed that Forte's clothing was wet and his shirt was inside out, and that he fit the general description of the potential perpetrator.  The detective stopped, asked to speak to Forte, and conducted a pat-down to ensure he had no weapons. The detective then informed the police dispatch that he had found an individual who fit the description of the perpetrator.

Shortly thereafter, another detective brought Torres and Vazquez to the area. The detective instructed only Torres to step out of the police cruiser and look at the man. She understood that she was being asked to determine whether it was the man she had seen three hours prior. She later reported that she did not feel rushed. Torres told the detective and Vazquez that, although the man had similar clothing, he was not the man she had seen.[2] Afterward, the women returned to the station to look at more photographs, but could not identify anyone as the perpetrator. On July 28, the police acquired footage from the surveillance videotapes at MassMutual Center ("MassMutual"), located at the northeast corner of State and Main Streets, and from the restaurant. The MassMutual footage from around the time of the murder shows a silhouette walking south on the west side of Main Street, crossing in front of the restaurant, wearing a dark top and lighter pants. The restaurant videotape, which provides a clearer image, depicts an individual, walking south on Main Street, who the police determined fit the description provided by the two women. Two officers familiar with Forte, who had each seen him within the last two days, recognized him as the man in the restaurant videotape. Later that

---

[2] At the suppression hearing, Torres testified that she thought that Forte was the man she and Vazquez had

day, the two women returned to the police station, where each woman was shown the restaurant videotape separately and asked if she saw anybody that she did or did not recognize. Both confirmed that the man in the videotape was the man they had seen that night. Torres also indicated that it was the same man she had seen at the show-up the day before, but that she had not recognized him then because his hair had been darker and wet and his shirt was inside out, hiding the white lettering.[3] Immediately after watching the videotape, each woman was shown a photographic array containing eight individual color photographs of men between the ages of forty-eight and fifty-two with other characteristics matching those of Forte. The women were told that the man they had seen may or may not be among the photographs. Each selected Forte as the man she had seen that night and in the videotape.

### *Trial Proceedings*

At trial, Torres and Vazquez watched the restaurant videotape and provided in-court identifications of Forte as the man in the videotape and the man they had seen that night. Torres testified that that they passed within fifteen feet of the man and had gotten a fairly good look at him; Vazquez testified that they had gotten within 20 – 35 feet of the man. In addition to the introduction of the restaurant videotape and MassMutual footage at trial, other evidence corroborated the identification of Forte as the man in the videotapes and the man the two women had seen that night. A security officer had seen him in a park near Tower Square at approximately 8:20 p.m. on July 26 and had asked him to leave because he was drinking beer. Surveillance footage of the park admitted at trial revealed a man who closely resembled, both in

---

seen earlier, but she was afraid to say so.
[3] There had been occasional thunderstorms and showers during the early morning hours and shortly after police arrived at park area to speak with Forte, there was a torrential downpour.

physical appearance and attire, the man in the restaurant videotape and fit the description the two women had provided. A Springfield police officer also had observed Forte, whom he recognized from a police department homeless initiative, at approximately 11:30 p.m. on July 26 wearing khaki-colored pants and a dark blue or black T-shirt with a white emblem on it.  Another individual testified that he had been in the park on the morning of July 27th and had seen Forte there; he had previously seen Forte around and knew that he was homeless. Surveillance footage of the park showed Forte.

The Commonwealth also introduced evidence of several incidents within the sixteen-hour period preceding the murder to establish that Forte was in a hostile and aggressive state of mind at the time of the murder. On July 26th, at approximately 11 a.m., Forte was discharged from Providence Hospital after he had engaged in disruptive and violent behavior, including turning over the furniture in the television room, throwing a chair into the hallway, shouting obscenities, and threatening to kill people. At approximately 4 p.m. that day, he had caused a disruption in a local supermarket, where he was "looming over" a female customer, shouting in her ear and saying that he wanted to kill her and kill Hispanics, and that he was drug-addicted and was going to start killing people because they made him sick. The store manager, who described Forte as "unstable and dangerous," cautiously walked him to the front of the store, where police officers escorted him away. At approximately 8 p.m., Forte appeared on a surveillance videotape in a park near Tower Square, a few blocks from the intersection of State and Main Streets, apparently chasing two other men out of the park, before he was asked to leave by the security officer for drinking beer. Finally, at approximately 11 p.m., Forte went to McCaffrey's Public House, a bar

on Main Street just south of State Street, and ordered a beer. As he left, he had an outburst,

appearing suddenly angry and shouting that everyone in the bar was "human scum."

### *Post-Trial Proceedings*

Forte filed a direct appeal from his conviction to the SJC, raising the following claims

for relief: (1) whether the trial judge erred by denying Forte's motion for a required finding of

not guilty; (2) whether the late disclosure by the prosecution of access codes needed to view a

surveillance video (the MassMutual footage) prevented him from learning its evidentiary value,

thus violating his due process rights; (3) whether the prosecution's knowing use of false evidence

required a reversal of his conviction; (4) whether the trial judge erred and created a substantial

likelihood of a miscarriage of justice by refusing to permit him to call the Commonwealth's

identifying witnesses as part of the defense case[4]; (5) whether the trial judge erred by admitting,

over objection, Forte's prior bad acts to show his state of mind; and (6) whether the trial judge

erred by denying Forte's motions to suppress as unduly suggestive the out-of-court and in-court

identifications of him by Torres and Vazquez.

In affirming Forte's conviction the SJC made the following rulings relevant to the

grounds for relief raised in his Petition:

> (1) *Untimely Disclosure of Access Codes.*  At trial, Forte objected when
> the Commonwealth sought to introduce video footage obtained from the
> MassMutual building.  Forte objected on the grounds that he had not had the
> opportunity to review the footage prior to trial.  The Commonwealth represented
> that the footage about to be shown had been provided to the defense. Forte then
> withdrew his objection.  The footage was shown to the jury without further

---

[4] Forte first raised this issue in a motion for new trial pursuant to Mass.L.Crim.P. 30(b) in which he asserted that that his state and federal constitutional rights to present a defense were violated when the trial judge refused to allow him to call two identifying witnesses that had previously testified as witnesses for the Commonwealth. That motion was denied by the trial judge; Forte appealed the denial and that appeal was consolidated with his direct appeal.

objection.  On appeal, Forte asserted that he had not had sufficient time to review the footage prior to trial and therefore, did not learn of its evidentiary value. He asserted that he had informed the trial court through numerous motions that the Commonwealth had delayed giving him the access codes necessary to review the footage and if he had been able to review it earlier, he could have prepared a more cogent defense.  The SJC held that Forte had waived the claim first, by not objecting to the introduction of the footage at trial, and then, by not raising the claim in his motion for new trial.  The SJC then reviewed the claim to determine whether there was a substantial likelihood of a miscarriage of justice.  Citing both state and federal case law, the SJC noted that the Commonwealth is required to disclose "exculpatory material evidence 'at such time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case' [and] [w]here such evidence is disclosed belatedly, 'it is the consequences of the delay that matter, not the likely impact [of the evidence]' " *Forte*, 469 Mass. at 486, 14 N.E.3d 900 (citation to quoted case omitted).  The SJC held that even if it assumed that there had been a lengthy delay in disclosing the access codes, Forte failed to show how he "'would have been able to prepare and present [his] case in such a manner as to create a reasonable doubt that would not otherwise have existed'" had the evidence been disclosed in a timely manner.  *Id.* Instead, the SJC found that Forte had ample opportunity to cross-examine witnesses about the MassMutual footage and to incorporate references thereto in his opening and closing statements and therefore, had "failed to show any prejudice, let alone that any delay caused a substantial likelihood of a miscarriage of justice." *Id.*

2. *Request to Recall Witnesses.* Prior to trial, Forte had filed a motion to include Vazquez and Torres on the witness list.  The trial judge noted they were already on the witness list; Forte confirmed he understood this.  The Commonwealth called both Vazquez and Torres in its case-in-chief.  Forte cross-examined both witnesses.  Before the defense case started, Forte indicated he wanted to recall Vazquez and Torres in order to introduce their witness statements and to discuss the issue of mistaken identification.  The judge found that Forte could have raised these issues during his cross-examination of these witnesses.  Forte responded that he thought that his cross-examination was limited to topics raised by the Commonwealth in its direct examination.  The judge stated that Forte's cross-examination had gone beyond the scope of the Commonwealth's direct examination and therefore, did not support his alleged reason for recalling the witnesses.  The judge further found that Forte had a full and fair opportunity to cross-examine Vazquez and Torres and he would not be given "a second bite at the apple to do that which [he had] already done." *Id.*, at 487.  Forte's request to recall these witnesses was denied, but the judge did allow Forte to introduce their witness statements.  The SJC noted that the trial judge had stated that the central issue at trial was identification, that Forte had represented himself with standby counsel and that Forte had engaged in "vigorous cross- and recross-examination

with each of the percipient witnesses that was 'thorough and repetitious'". *Id.*, 14 N.E.3d 900.   The SJC noted that the manner and order of the presentation of evidence and questioning of witnesses is left to the sound discretion of the trial judge, including the determination of whether to allow witnesses to be recalled. Recall of a witness is appropriate where the defendant would be unreasonably deprived of the opportunity to present newly discovered evidence which would be material to his defense. *Id.,* at 488.   The SJC found that Forte had not presented any explanation, either in his motion for new trial or on appeal, as to why he could not have questioned Vazquez and Torres about the inconsistencies about the MassMutual footage and related still photographs and their testimony during cross-examination. The SJC agreed with the trial judge that a review of the record established that Forte had conducted vigorous cross- and re-cross examination of Vazquez and Torres and further found that that he had access to the MassMutual footage before trial and was aware of its contents. The SJC held that under these circumstances he was not denied his constitutional right to confront witnesses against him, or the opportunity to challenge the witnesses' credibility and the truth or accuracy of their testimony. Therefore, the SJC held, the trial judge's refusal to allow Forte to recall the witnesses was not an abuse of discretion.

3. *Presentation of False Testimony*. Forte asserted that the Commonwealth wrongly introduced the testimony of Vazquez and Torres knowing it was false. Forte asserted that based on the MassMutual footage, these witnesses could not have crossed paths with him at the time and place they testified they did.  He asserted that given the MassMutual footage, the Commonwealth must have been aware that these witnesses' testimony was false as to a material issue in the case—identification of the perpetrator.  The SJC stated that while the Commonwealth may not knowingly present testimony at trial that it knows or should have known is false, it need not make an independent credibility determination as to each witness prior to calling such witness—as long as the Commonwealth has not acted improperly in procuring and presenting evidence, the determination of whether a witness is lying or telling the truth is left to the jury. Where there is physical evidence, such as photographs or documents, indicative of innocence and which the court is in as good a position to review and assess as is the jury, the court may review the evidence and make a decision without regard to the jury's finding.  The SJC reviewed the still images from the MassMutual footage and found that they were not so indicative of Forte's innocence as to require the court to intrude on the jury's role.  Moreover, the SJC determined that it could not find that the testimony at issue was objectively false given that the MassMutual footage is not sufficiently clear or contradictory that it would lead the Commonwealth to believe that the witnesses' testimony as to what they saw was untrue.  The SJC further observed that minor inconsistencies do not constitute falsities and may be highlighted through cross-examination and rebuttal evidence. The SJC held that an assessment of the credibility of these witnesses in relation to a reasonable determination of the documentary evidence was a proper

task for the jury and rejected Forte's contention that the Commonwealth had knowingly used false testimony that could have reasonably affected the judgment of the jury. *Id.* at 491 (citing federal and state law).

### Discussion

#### *Standard of Review*

The standard of review for habeas corpus petitions brought by state prisoners is set forth

in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.

Under the AEDPA:

> a federal court may grant habeas relief if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." This means we look to the Supreme Court's holdings, as opposed to dicta, at the time the state court rendered its decision, while employing the following criteria.

> An adjudication will be contrary to clearly established law if the state court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'".  On the other hand, a state court adjudication constitutes an unreasonable application "if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case."  An "'*unreasonable* application of federal law is different from an *incorrect* application of federal law,'" and a state court is afforded deference and latitude.

> The second scenario justifying habeas relief is if the state court adjudication led to "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Though this means that a federal court will be taking a closer look at a state court's findings of fact, the fundamental principle of deference to those findings still applies.

> A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."

*Hensley v. Roden*, 755 F.3d 724, 730-31 (1st Cir. 2014)(internal citations and citations to quoted authorities omitted)(emphasis and alterations in original). In administering these standards, the state court's factual findings are presumed to be correct, and they can be overcome only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

<u>Whether Forte Is Entitled To Relief  On His Claim That The Trial Court Erred By Refusing To Allow Him To Recall The Percipient Witnesses</u>

Forte asserts that his Sixth Amendment right to compulsory process was violated when the trial judge refused to allow him to recall the two percipient witnesses, Vasquez and Torres, to question them about alleged discrepancies between their testimony and the content of the MassMutual video surveillance tapes.  In his brief to the SJC, Forte asserted that the trial judge's failure to allow him to call these witnesses violated his right to compulsory process under the Sixth and Fourteenth Amendments.  Forte takes the position before this Court that the SJC's decision relied solely on state law precedent and ignored the federal nature of his claim. He argues that the SJC decision is, therefore, entitled to no deference and that this Court must review the claim *de novo.* The Respondent, on the other hand, argues that there is a rebuttable presumption, which Forte cannot overcome, that the SJC adjudicated the federal claim on the merits and therefore, its decision is entitled to deferential review.  Because the standard of review makes no difference in the outcome of this claim, it is not necessary for me to resolve this issue and instead, I will review the claim *de novo*.

The right of an accused to have compulsory process for obtaining witnesses in his favor is guaranteed by the Sixth Amendment and applies to the states through the Due Process Clause of the Fourteenth Amendment:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920 (1967).   To establish that his right to compulsory process was violated, a defendant must establish both that the testimony was both material and favorable to his defense, *and* that the exclusion was "arbitrary" or "disproportionate" to the purpose of the evidentiary rule pursuant to which it was excluded. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440 (1982); *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261 (1998); *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704 (1987).

Under Massachusetts law, allowing the defense to recall of a witness is appropriate where the defendant would otherwise be unreasonably deprived of the opportunity to present newly discovered evidence material to his defense. *Forte*, 469 Mass. At 488, 14 N.E.3d 900 (citing *Commonwealth v. Hicks*, 375 Mass. 274, 276-77, 376 N.E.2d 558 (1978)). The evidence sought to be introduced by Forte upon recall of the percipient witnesses related to the images on the MassMutual footage (which he alleged conflicted with their testimony) and the witness statements they gave to the police. The trial judge refused to allow Forte to recall Vazquez and Torres after finding that Forte had vigorously cross-examined them during the Commonwealth's case-in-chief.  The trial judge further found that Forte had the evidence available to him (the MassMutual footage) during that cross-examination and therefore, could have could have asked both witnesses about any discrepancy between their testimony and that footage at that time. On

appeal, the SJC reviewed the record and agreed with the trial judge that Forte had conducted vigorous cross- and re-cross examination of Vazquez and Torres and further found that that he had access to the MassMutual footage before trial and was aware of its contents. Put another way, the SJC found that the evidence which Forte sought to introduce through these witnesses was not new. This factual findings is presumed correct and has not been rebutted[5].  Moreover, as pointed out by the SJC, Forte had not, either in his motion for new trial or on appeal, provided any explanation as to why he could not have questioned other witnesses who testified after the MassMutual footage was admitted about other person who appeared in that footage and related still images around the time the crime was committed (Vazquez and Torres had testified they had only seen Forte in the area) and other alleged inconsistencies between the percipient witnesses' testimony and the footage.[6]  In fact, Forte had declined to cross-examine two of the witnesses who could have testified on these issues and failed to effectively cross-examine others. Under these circumstances, the percipient witnesses' testimony could hardly be characterized as "material" to Forte's defense.[7]  Accordingly, I find that the state court's enforcement of its evidentiary rule was not arbitrary and capricious and therefore, Forte is not entitled to habeas relief with respect to this claim.

---

[5] While the Court is reviewing Petitioner's legal claims *de novo*, the state courts' findings of fact are presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence. *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 65-6 (1st Cir. 2009).

[6] I will note that Forte has also failed to offer an explanation in his submissions to this Court has to why he did not question other witnesses who testified, or could have testified, regarding the content of the MassMutual footage.

[7] Little discussion is warranted as to Forte's assertion that he wanted to recall these witnesses in order to introduce their police statements into evidence.  Even if I were to find that the trial judge's failure to permit him to recall these witnesses for this purpose violated his right to compulsory process, like the SJC, I would find that such failure constituted harmless error given that the trial judge permitted him to introduce these witnesses' police statements into evidence.

_Whether Forte is Entitled to Relief on His Claim that The Trial Court Violated His Fourteenth Amendment Right to Present a Complete Defense by_ Delaying His Access to Review of A Surveillance Video.

Forte asserts that his Fourteenth Amendment right to present a complete defense was violated when the trial judge delayed ruling his request for the access code which would have permitted him to prepare a more cogent defense. Forte argues that the SJC did not address the merits of his claim and therefore, this Court must review the claim _de novo_.  Respondent acknowledges that the SJC did not review the merits of Forte's claim that failure to provide timely access to the MassMutual footage violated his due process rights.  However, as the Respondent points out, the SJC did not review this claim because it found the claim waived for failure to object at the time that the evidence was admitted at trial and because Forte failed to raise it in his motion for new trial.  The SJC then conducted a limited review of the claim to determine whether there was a substantial likelihood of a miscarriage of justice. Respondent argues that under these circumstances, Forte's claim has been procedurally defaulted and federal habeas review is barred.

I agree with Respondent that Forte waived state court review of this claim by failing to raise a timely objection at trial, or upon collateral review.  Because this claim was defaulted "pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless [Forte] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." _Coleman v. Thompson_, 501 U.S. 722, 732, 750 111 S.Ct. 2546 (1991)(when petitioner fails to raise his federal claims in compliance with relevant state procedural rules state court's refusal to adjudicate claim ordinarily qualifies as an independent

14

and adequate state ground for denying federal review).  The Massachusetts contemporaneous

objection rule is regularly and consistently enforced by the state courts and therefore, is an

adequate and independent state ground precluding federal habeas review. *See Hodge v.*

*Mendonsa*, 739 F.3d 34, 44 (1st Cir. 2013)( "We have held, with a regularity bordering on the

monotonous, that the Massachusetts requirement for contemporaneous objections is an

independent and adequate state procedural ground, firmly established in the state's jurisprudence

and regularly followed in its courts.").[8]

### *Cause and Prejudice*[9]

"To excuse a procedural default a petitioner's cause must relate to an objective factor,

external to the defense, that thwarted (or at least substantially obstructed) the efforts of the

defendant or his counsel to obey the state's procedural rule. Mere attorney error, not amounting

to ineffective assistance in a constitutionally significant sense, is insufficient to constitute cause."

*Burks v. Dubois*, 55 F.3d 712, 716-17 (1st Cir. 1995).  Looking at the record, there is no apparent

impediment which precluded Forte, who represented himself, from timely objecting to the

admission of the MassMutual footage on the grounds that it had not been provided to him in a

timely manner.  Indeed, although initially raising an objection, after a brief colloquy with the

---

[8] Federal habeas review may also be appropriate where the SJC or other reviewing court has excused the waiver and addressed the federal claim on its merits. However, the SJC, after finding that Forte had waived this claim by failing to make a timely objection, conducted only a limited review to determine whether denial of the claim would constitute a substantial likelihood of a miscarriage of justice.  The First Circuit has held that a state court's review of a procedurally defaulted claim under a "substantial likelihood of a miscarriage of justice standard" does not constitute a waiver of the default by the reviewing court. *Janosky v. St. Amand*, 594 F.3d 39, 44 (1st Cir. 2010).

[9] Forte acknowledges that the SJC did not review the merits of this claim.  Nevertheless, he does not address either prong of the cause/prejudice standard, nor does he argue that failure to review this claim will result in a fundamental miscarriage of justice.

trial judge and the prosecutor, Forte explicitly withdrew his objection. Therefore, there was no

"cause."  Additionally, Forte "cannot meet the high burden of showing actual prejudice. To scale

this wall, a petitioner must demonstrate 'not merely that the errors at ... trial created a possibility

of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire

trial with error of constitutional dimensions.' " *Ortiz v. Dubois,* 19 F.3d 708, 714 (1st Cir. 1994)

(quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596 (1982)).  In this case,

Forte has failed to establish that he did not receive the MassMutual footage in time to adequately

prepare his defense.  Moreover, even if he could show that he did not receive this evidence in a

timely manner, he has failed to establish how he would have prepared and presented his case any

differently[10].  That is, he has failed to " 'convince [the court] that there is reasonable probability

that the result of the trial would have been different' absent the error." *Prou v. United States*, 199

F.3d37, 40 (1st Cir. 1999)(quoting *Strickler*, 527 U.S. at 289, 119 S.Ct. 1936)).  On the contrary,

as found by the SJC, Forte was able to vigorously cross-examine witnesses about the

MassMutual footage and related still images, and to and to incorporate references thereto in his

opening and closing statements. Accordingly, I find that Forte has failed to establish that late

disclosure of the MassMutual footage worked to his disadvantage.  For these reasons, I find that

he has not established prejudice.

---

[10] Forte repeatedly asserts that had he had the MassMutual footage prior to trial, he could have better prepared his defense.  First, the SJC noted that the MassMutual footage was discussed at an evidentiary hearing on Forte's motion to suppress *prior to trial* and at no point during that hearing, did Forte or his counsel express concern that the MassMutual footage had not been sufficiently disclosed. *See Forte*, 469 Mass, at 485 n, 28, 14 N.E.3d 900. And, as noted above, even if I were to assume that the access codes were disclosed belatedly, Forte does not explain exactly how having earlier access to these materials would have changed his defense strategy, nor does he explain how he was prejudiced by the late disclosure.

### *Fundamental Miscarriage of Justice*

In order to establish that a fundamental miscarriage of justice will occur if his claim is not considered on the merits, Forte would have to establish "actual innocence." *Gaskins v. Duval*, 640 F.3d 443, 454 (1st Cir. 2011). To succeed on such claim, he " 'must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.' Moreover, 'actual innocence' means 'factual innocence, not mere legal sufficiency.'" *Id.* Certainly there is nothing in the record which would suggest that Forte can meet the heavy burden of showing his actual innocence. Accordingly, Forte is not entitled to relief on his claim that his due process right to prepare a meaningful defense was violated when the trial judge failed to order the Commonwealth to turn over (and the Commonwealth failed to independently turn over) the access codes to the MassMutual footage in a timely manner.

### *Whether Forte Is Entitled To Relief On His Claim That His Constitutional Rights were Violated by the Commonwealth's knowing use of Tainted Evidence*

Forte asserts that his constitutional right to a fair trial was violated by the prosecution's knowing use of false testimony. More specifically, he asserts that the MassMutual footage introduced by the Commonwealth at trial was of poor quality and that enhanced, better quality still images of this footage (obtained by his appellate counsel) prove that the percipient witnesses, Vazquez and Torres, testified falsely. He argues that the Commonwealth, who had possession and control over the MassMutual footage, was aware, based on that footage, that these witnesses were testifying falsely. He then asserts that the prosecution's knowing use of these witnesses false testimony on a material issue and/or it failure to correct the misleading testimony violated his due process right to to a fair trial. He asserts that the use of the false testimony was compounded by the prosecutor telling the jury in his closing argument that the

witnesses' testimony was "corroborated" by the video evidence. Forte also asserts that the

prosecutor failed to correct the misleading testimony of a police video specialist who "made an

analytically impossible gender distinction of an unknowable person in the Mass Mutual video to

give the false impression that the identification witnesses pertinent testimony was corroborated

thereby." *Petitioner's Statement of Points and Authorities In Supp. Of Grounds For Relief*

(Docket No. 7), at p. 5. Forte argues that the SJC relied on state court precedent in denying this

claim and therefore, this Court's review should be *de novo*. Respondent argues that Court should

review the SJC's decision under the deferential standard set forth in the AEDPA. In support, the

Respondent points out that *Commonwealth v. Sullivan,* 410 Mass. 521 (1991), the case cited by

the SJC, cites to *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959), the case relied on by

Forte to support his contention that he is entitled to relief.  I agree with the Respondent that the

SJC addressed the federal nature of Forte's claim and in doing so, cited to the applicable

Supreme Court precedent. Therefore, he is entitled to federal habeas relief only if the SJC's

denial of his claim constitutes an unreasonable application of that Supreme Court precedent, or

the SJC unreasonably applied that Supreme Court precedent to the facts of his case.

A conviction obtained through the prosecution's knowing use of false testimony or the its

failure to correct evidence that it knows to be false violates the Fourteenth Amendment. *Napue*,

360 U.S. at 269, 76 S.Ct. 1173.  This is true even where "the false testimony goes only to the

credibility of the witness," rather than directly on the guilty of the defendant. *Id.* Where use of

such tainted evidence may have had an effect upon the outcome of the trial, the conviction must

be reversed. *Id.*, at 272, 79 S.Ct. 1173.  In this case, Forte asserts that based on the MassMutual

footage, Vazquez and Torres witnesses could not have crossed paths with him at the time and

place they testified they did.  He argued to the SJC that Given the MassMutual footage, the

Commonwealth must have been aware that these witnesses' testimony was false as to a material

issue in the case—identification of him as the perpetrator.  The SJC properly recognized the

governing legal principle set forth by the Supreme Court in *Napue*, *i.e.*,  the prosecution may not

knowingly present testimony at trial that it knows or should have known is false.  At the same

time, the SJC noted that the prosecution was not required to make an independent credibility

determination as to each witness prior to calling such witness to the stand: as long as the

Commonwealth has not acted improperly in procuring and presenting evidence, the

determination of whether a witness is lying or telling the truth is left to the jury.

Forte asserted that the MassMutual footage and still photographs show that Vazquez and

Torres were lying. [11]   As noted by the SJC, where there is physical evidence, such as

photographs or documents, indicative of innocence, the court is in as good a position to review

and assess as is the jury and it may review the evidence and make a decision without regard to

the jury's finding.  The SJC reviewed the still images from the MassMutual footage and found

that they were not so indicative of Forte's innocence as to require the court to intrude on the

jury's role.  Moreover, the SJC determined that it could not find that the testimony at issue was

objectively false given that the MassMutual footage is not sufficiently clear or contradictory that

it would lead the prosecution to believe that the witnesses' testimony as to what they saw was

untrue.  The SJC further observed that minor inconsistencies do not constitute falsities and may

be highlighted through cross-examination and rebuttal evidence. The SJC held that an

---

[11] As pointed out by the SJC, the characterization of the testimony as false both in Forte's appeal to the SJC and his arguments to this Court, is based on his own subjective interpretation of the MassMutual footage and still images.

assessment of the credibility of these witnesses in relation to a reasonable determination of the documentary evidence was a proper task for the jury and rejected Forte's contention that the Commonwealth had knowingly used false testimony that could have reasonably affected the judgment of the jury. *Id.* at 491 (citing federal and state law).

The SJC's factual findings were not unreasonable in light of the evidence presented; these factual findings are presumed correct and have not been rebutted by Forte.   Moreover, the SJC identified the governing legal principle and its application of the law, as set forth in *Napue,* to the facts of these case was not an unreasonable application of Supreme Court precedent. For this reason, Forte is not entitled to habeas relief with respect to this claim.

## Conclusion

For the foregoing reasons, the Petition Under 28 U.S.C. § 2254 For Writ OF Habeas Corpus By A Person In State Custody (Docket No. 6), is ***denied***.

## Certificate of Appealability

The statute governing appeals of final orders in habeas corpus proceedings provides that an appeal is not permitted "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000) (internal quotation marks omitted). This is a low bar; a claim can be considered "debatable" even if every reasonable jurist would agree that the

petitioner will not prevail. *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029 (2003).  In ruling on an application for a certificate of appealability, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

I grant the certificate of appealability with respect to Grounds One and Three of the Petition, *i.e.,* Petitioner's claims that: (1) the trial court deprived of his Sixth Amendment Right to compulsory process by refusing to allow him to recall the two percipient witnesses in his case-in-chief, and (2) the trial court deprived him of his Fourteenth Amendment Right to a fair trial by allowing the admission of tainted material evidence. I do so because although I have rejected Petitioner's legal arguments in regards to these claims, he has made a substantial showing of the denial of a constitutional right. Moreover, reasonable jurists could disagree with my conclusions. I also find that or that the issues presented were adequate to deserve encouragement to proceed further.  Therefore, issuance of a certificate of appealability as to these claims is appropriate.

However, I deny the certificate of appealability with respect to Petitioner's remaining claim, *i.e.*, his second ground for relief alleging that the trial court deprived him of his Fourteenth Amendment Right to present a complete defense by delaying access to review of a surveillance video, by refusing to allow the defense to examine two identification witnesses, and because there was no direct physical evidence he had committed the murder. This claim was procedurally defaulted and Petitioner has not established cause/prejudice, or that failure to consider the claim would result in a fundamental miscarriage of justice.  Under the circumstances, I do not find that reasonable jurists could debate whether the claim was adequately addressed by the Court, nor are

the issues presented adequate to deserve encouragement to proceed further.  Therefore, with

respect to this claim, the certificate of appealability is denied.

**So Ordered.**


/s/ *Timothy S. Hillman*
TIMOTHY HILLMAN
DISTRICT JUDGE